IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | |
|---|---|
| WESLEY HALLMAN, #132 625 | * |
| Plaintiff, | * |
| v. | *   2:03-CV-1025-DRB |
| | (WO) |
| WARDEN BOUTWELL, *et al.*, | * |
| Defendants. | * |

_____

**MEMORANDUM OPINION**

Plaintiff, Wesley Hallman ["Hallman"], filed this 42 U.S.C. § 1983 action on August 26, 2003.[1]  He complains that during his incarceration at the Red Eagle Honor Farm ["Red Eagle"] located in Montgomery, Alabama, Defendants subjected him to cruel and unusual punishment when they forced him to remain in handcuffs and shackles for a period of five days.  Hallman seeks monetary damages and injunctive and declaratory relief against Warden C.E. Boutwell, and Lieutenants Edwin Lane, Donnie Brown, and Billy Pittman.

Defendants filed a special report and supporting evidentiary materials refuting Hallman's claims for relief.  In accordance with the instructions contained in the court's order entered on February 6, 2004 (Doc. No. 25), the court deems it appropriate to treat this

---

[1] Hallman originally filed his complaint in the United States District Court for the Northern District of Alabama.  By order entered September 25, 2003, the court for the Northern District of Alabama ordered the instant case transferred to this court.

report as a motion for summary judgment. Thus, this case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, the evidentiary materials filed in support thereof, and Hallman's response in opposition to the motion, the court concludes that Defendants' motion for summary judgment shall be granted.

## I. FACTS AND ALLEGATIONS

The events about which Hallman complains occurred on Thursday, July 31, 2003. On this date, he and inmate Timothy Powell got into an argument. As consequence of this conduct, Hallman asserts that Defendants placed him in handcuffs and leg irons and kept him restrained in this manner for five days even when he slept, ate, or relieved himself. These conditions, Hallman alleges, subjected him to severe emotional and psychological pain and suffering. He further asserts that Defendants Lane, Brown, and Pittman conspired to violate his Eighth and Fourteenth Amendment rights by keeping him fully restrained during the time period in issue and contends that their conduct reflected a deliberate disregard for his safety and well being and was done maliciously and sadistically with intent to cause him harm. (Doc. No. 1.)

Defendants do not dispute that they placed Hallman in handcuffs and leg irons on July 31, 2003. On this date, Steward Julia Johnson ordered Hallman to clean out a mop and mop the cooler floor. Hallman refused this directive and argued with Steward Johnson. As a result of his conduct, Hallman was escorted to the shift office where Lt. Lane reprimanded him for his actions. Lt. Lane ordered Hallman to return to the kitchen and mop the cooler floor as earlier directed. After returning to the kitchen, Hallman proceeded to argue with

inmate Timothy Powell and once again refused Steward Johnson's order that he get a mop and wash it out. Both inmates were then escorted to the shift office. Hallman, upon being questioned by Lt. Lane about his behavior, became belligerent and argumentative. Lt. Lane proceeded to inform Hallman that he would receive a disciplinary for failing to obey a direct order of a correctional official. Lt. Lane then ordered Hallman to return to his dormitory area due to his argumentative and disruptive behavior which was interfering with the normal operation of the institution. (Doc. No. 23, Exhs. 1-4, 7.)

Approximately twenty minutes later, Hallman returned to the front of the shift office. Lt. Lane did not immediately notice Hallman because he was busy writing an incident report. When he looked up and observed Hallman standing in the office, Lt. Lane perceived Hallman as having a visibly angry demeanor. Lt. Lane ordered Hallman back to his dormitory. Hallman refused to comply with the directive. Lt. Lane informed him that he would be placed in leg irons and handcuffs due not only to his failure to follow the order that he return to his dormitory area, but also because of the previous behavior he displayed with Steward Johnson and inmate Powell. After being secured with the leg irons and handcuffs, Hallman told Lt. Lane, "Yeah, hurry and get me out of this place, I'm tired of being here." Lt. Lane found Hallman's statements and behavior created a situation where he had become both a security and safety risk due to Red Eagle's status as a minimum custody camp. Hallman's statements to Lt. Lane resulted in him receiving a disciplinary for intentionally creating a security, safety, and health hazard. (Doc. No. 23, Exhs. 1-4, 7-9.)

After securing Hallman, Lt. Lane contacted the Kilby Correctional Center to check

3

on the possibility of transferring Hallman to that institution. Kilby could not take additional inmate transfers at that time and Lt. Lane was unable to make contact with the transfer division which was closed for the day. Accordingly, Lt. Lane made arrangements to inventory Hallman's property and move his bed and linens to the conference area of the shift office.[2] (Doc. No. 23, Exhs. 1,2.)

While housed in the conference room, Hallman was under continuous supervision and could eat, smoke, shower, and use the facilities at his request. Lt. Pittman and Lt. Brown state that during their tours of duty during the relevant time periods in question, Hallman's handcuffs were removed when he wished to eat or use the facilities. Lt. Pittman states that Hallman's leg irons were also removed when he showered. Lt. Lane returned to Red Eagle on August 3, 2003 after being away from the camp on his regular days off. Upon his arrival at the shift office, he noted that Hallman was sitting in the office without restraints. After relieving the shift supervisor who had been on duty at the time, Lt. Lane placed leg irons on Hallman due to the fact that he was still considered an escape risk and could still potentially do harm to inmate Powell based on their previous disagreement. Lt. Lane did, however, observe that Hallman's demeanor had changed and, therefore, he did not place him in handcuffs for the remainder of that day. (Doc. No. 23, Exhs. 2-4.)

Hallman's disciplinary hearings took place when Lt. Lane returned to work on August

---

[2]Defendants assert that a shortage of manpower available for transfers along with the fact that inmates are usually not transferred on weekends because receiving areas are closed except for extreme emergencies caused a delay in arranging Hallman's transfer from Red Eagle. Hallman was transferred to the Kilby Correctional Facility on Monday, August 4, 2003. (Doc. No. 23, Exhs. 1, 2.)

3, 2003. The disciplinary hearing officer found Hallman guilty of failing to obey a direct order of an Alabama Department of Corrections employee and intentionally creating a safety, security, or health hazard.  The hearing officer recommended that Hallman loose various privileges for up to 45 days, that he be assigned extra duty, that he be referred to a classification officer for a custody review, and that he be transferred to a higher security level institution.  On Monday, August 4, 2003 a classification supervisor initiated the requisite paperwork, and Hallman was transferred to the Kilby Correctional Facility. (Doc. No. 23, Exhs. 2, 7-9.)

Defendants deny that they subjected Hallman to unconstitutional conditions of confinement or acted with deliberate indifference to his safety and well being.  Because Red Eagle is a minimum custody institution, it has no exterior perimeter security fence, no holding cells to secure inmates who become security risks,  low staff to inmate ratios, and inmates are free to move around the facility with no means by which correctional officials can control their movement.  Consequently, when Hallman exhibited disruptive and insubordinate conduct to other inmates and staff on July 31, prison officials determined that implementation of certain security measures were necessary for the safety and security of Hallman as well as the camp and its occupants, and to ensure the continued orderly operation of Red Eagle. (Doc. No. 23, Exhs. 1-4.)

Defendants  maintain that Hallman's handcuffs were removed by prison staff when he was served meals, when he went to the bathroom, while he showered, and sometimes at his own request. The security measures implemented by Defendants  were for Hallman's

5

own protection as well as the protection of other inmates, the institution, and the general public, to restore the institution to normal operation, and to prevent further disruptions to the proper functioning of a minimum security camp which is not set up to handle the type of security problem presented by Hallman.  Defendants maintain that they did not restrain Hallman for purposes of punishment or maliciously or sadistically for the purpose of causing harm.  Had Hallman complained of any health problems associated with his placement in restraints, Defendants state that arrangements would have been made to transfer him to a medical center for treatment.  Defendants further state that Hallman made no complaints of pain or requests for medical attention while in restraints.  (Doc. No. 23, Exhs. 1-6.)

## II. STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by Defendants, Hallman is required to produce some evidence which would be admissible at trial supporting his constitutional claims.  Rule 56(e), *Federal Rules of Civil Procedure*.  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990).  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557

(11th Cir. 1984).  Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996).  Summary judgment is therefore appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56(c) *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Hallman has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

### III. DISCUSSION

*A. The Eighth Amendment Claim*

The Constitution proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991). The Constitution "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349). Thus, it is well-settled that the treatment a prisoner receives and the conditions under which he is confined are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eight Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)); *Helling,* 509 U.S. at 33. In order to demonstrate an Eighth Amendment violation with respect to conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. The objective component requires an inmate to prove the he was denied the "minimal civilized measure of life's necessities." *Id*. The challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to his future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir.

2004). The subjective component requires a prisoner to prove that the prison official acted with "deliberate indifference" in disregarding that risk by showing that an official knew the inmate faced a "substantial risk of serious harm" and with such knowledge, disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828, 834, 837. Additionally, a challenge to the way in which prison officials respond to a disturbance must show that they acted "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986) (quotations omitted); *Hudson v. McMillan,* 503 U.S. 1, 7 (1992) (a court reviewing an Eighth Amendment excessive force claim must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

Hallman has described, and the facts produced by Defendants corroborate, that he exhibited disruptive, argumentative, and disorderly conduct on July 31, 2003 to both corrections staff and another inmate. These facts demonstrate that prison officers had a legitimate concern in maintaining and restoring order to Red Eagle, a minimum security institution with no exterior perimeter fences to prevent escapes and no holding cells in which to secure unruly, combative, and/or non-compliant inmates who disrupt the orderly running of the camp. Nonetheless, Defendants assert that Hallman's restraints were periodically removed when he ate, showered, used the restroom, and sometimes per his request. Hallman disputes that he was an escape risk and that his behavior created a security or safety risk for the institution necessitating the use of handcuffs and ambulatory restraints which he alleges were never removed for any reason. Notwithstanding this factual dispute, if a party "fails

9

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant. *Celotex*, 477 U.S. at 322. Moreover, no material issues can be in dispute where a plaintiff's evidence fails to establish a constitutional violation.

Taking Hallman's allegations as true, as this court must, his placement in handcuffs and amubulatory restraints to prevent further disruption of camp operations and to prevent other potential security breaches due to his display of argumentative and belligerent conduct does not amount to cruel and unusual punishment. Hallman's allegations do not show that Defendants used more force than was necessary to maintain or restore discipline during a time when he exhibited aggressive, disrespectful, and confrontational behavior with both prison staff and a fellow inmate and was visibly agitated. Further, there is no indication much less allegation that Defendants applied force in the actual placement in restraints, that Hallman did not comply and cooperate completely when placed in restraints, or that the manner in which Defendants placed him in restraints was inappropriate.[3] Hallman makes no assertion that his movement was restricted while he was restrained or that he was deprived of food, water, showers, or bathroom breaks. To the contrary, Hallman could move about the conference room, read, use the restroom at his request, and was allowed outside

---

[3] The evidentiary material before the court reflects that Lt. Lane placed Hallman in handcuffs and ambulatory restraints at approximately 6:45 p.m. on July 31, 2003. (Doc. No. 23, Exh. 7.) He departed Red Eagle for Kilby on August 4, 2003. (*Id*. Exhs. 2-4.)

to smoke. Further, the pleadings before the court do not show that Hallman sought medical treatment, either physical or psychological, while in restraints or after they were removed.

The pleadings filed by the parties demonstrate that institutional safety and security concerns necessitated Hallman's placement in handcuffs and leg restraints until his transfer to a more secure institution could be effectuated. The evidentiary material before this court establishes that Defendants took reasonable security measures under the circumstances, and their actions did not constitute the type of malicious or sadistic behavior required for stating an Eighth Amendment violation. Here, Hallman fails to establish that he suffered a sufficiently serious constitutional deprivation which may be considered "extreme." *See Chandler*, 379 F.3d at 1290, that Defendants instituted the use of restraints "maliciously and sadistically for the very purpose of causing harm," *Whitley*, 475 U.S. at 320-21, or that they exhibited any deliberate indifference or reckless disregard with respect to his safety or well-being. *Farmer*, 511 U.S. at 837. Though unpleasant, it cannot be said that, under the facts and circumstances of this case, the conditions about which Hallman complains were of sufficient severity to implicate the Eighth Amendment. *See Williams v. Burton*, 817 F.2d 1572, 1576 (11th Cir. 1991) ("How long restraint may be continued calls for the exercise of good judgment on the part of prison officials. Once it is established that the force was applied in a good faith effort to maintain discipline and not maliciously or sadistically for the purpose of causing harm, courts give great deference to the actions of prison officials in applying prophylactic or preventive measures intended to reduce the incidence of riots and other breaches of prison discipline.") (internal citations omitted).

11

In light of the foregoing, the court finds that Hallman has failed to demonstrate that Defendants violated his Eighth Amendment rights.  Defendants' dispositive motion on this claim shall, therefore, be granted.

## B.  *The Conspiracy Claim*

Hallman contends that Defendants conspired to violate his constitutional rights by keeping him in handcuffs and ambulatory restraints for five days.  "Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks,* 449 U.S. 24, 27 101 S.Ct. 183, 186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n. 4 (11th Cir.1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002).  "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991). . . . [T]he linchpin for conspiracy is agreement . . ." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants. . . .  For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284.  Merely

"stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

The court has carefully reviewed the pleadings filed by the parties. There is a total lack of evidence to support Hallman's theory that Defendants conspired to deprive him of his constitutional rights. Specifically, he fails to present any evidence which demonstrates that Defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468. At best, Hallman's assertions are self serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy between the defendants. *See Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984). Thus, Hallman has failed to produce requisite evidence of a conspiracy, and Defendants are entitled to summary judgment on this claim. *Bailey*, 956 F.2d at 1122.

### C. The Retaliation Claim

Hallman makes the conclusory allegation that the "action of Lt. Lane was retaliation because he did not want to listen to what I had to say about anything." (Doc. No. 32, pg. 5.) Defendants' evidence shows that the decision to place Hallman in restraints resulted from his behavior and the security threat such behavior posed to staff, other inmates, and the orderly running of a minimum custody camp.

The method of establishing a retaliation claim is essentially the same as that for a claim of race or sex discrimination. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986). Specifically, an inmate has the initial burden of setting forth a prima

face case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that the prison official retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). To establish a prima facie case, an inmate must show that he had engaged in a constitutionally protected activity; that he suffered an adverse treatment simultaneously with or subsequent to such activity; and that a causal link exists between the protected activity and the adverse treatment. *Donnellon*, 794 F.2d at 600-601. If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court that the proffered reason for the adverse decision is a pretext for retaliation. An inmate may satisfy this burden by persuading the court either directly that a retaliatory reason more than likely motivated the prison official or indirectly that the proffered reason for the adverse decision is not worthy of belief.

For purposes of this opinion, the court will assume, without deciding, that Hallman carried his initial burden of presenting prima facie proof of retaliation. The evidentiary material before the court, however, reflects that Lt. Lane's actions resulted from legitimate

14

concerns for the safety of prison personnel, inmates, and the general public, as well as the maintaining the secure operation of the camp as a result of Hallman's non-compliant and disruptive behavior as evidenced by the disciplinaries he received for failing to obey the direct order of prison personnel and intentionally creating a safety, security, health hazard. This reason is sufficient to rebut Hallman's prima facie case. Hallman presents only his conclusory allegation that Lt. Lane acted in retaliation. This is insufficient to show that the reason proffered by Defendant Lane, and substantiated by the record, is pretextual. The court, therefore, concludes that no retaliatory motive existed for placing Hallman in restraints.

### D. The Administrative Regulation Claim

Hallman complains in his response to Defendants' written report that Defendants knew that keeping him in restraints for five days and failing to transfer him to another institution violated agency regulations. Standard operating procedure at Red Eagle with respect to the use of restraining devices allows their use where security is a concern or in other situations where it is deemed necessary to restrain an inmate including maintaining control of inmate behavior. (Doc. No. 23, Exh. 10.) Hallman presents no evidence to the contrary. Moreover, assuming for the sake of argument, that there was some deviation from standard operating procedures and/or agency regulations, such is not tantamount to a due process violation. *Smith v. State of Georgia*, 684 F.2d 729 (11th Cir. 1982); *see also Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987).

## IV.  CONCLUSION

In light of the foregoing, Defendants' motion for summary judgment shall be granted.

A separate Judgment and Order follows.


Done, this 17th day of April 2006.

>**/s/ Delores R. Boyd**
>DELORES R. BOYD
>UNITED STATES MAGISTRATE JUDGE